## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **SUSAN SPATH HEGEDUS, INC.,** | : | |
| **d/b/a KERN & CO.,** | : | |
| *and on behalf of those similarly situated* | : | |
| **Plaintiff,** | : | **CIVIL ACTION** |
| **v.** | : | |
| | : | |
| **ACE FIRE UNDERWRITERS** | : | **No. 20-2832** |
| **INSURANCE COMPANY,** | : | |
| **Defendant.** | : | |

### MEMORANDUM

**Schiller, J.**                                                                                     **May 7, 2021**

Presently before the Court is Defendant ACE Fire Underwriters Insurance Company's ("ACE") motion to dismiss Plaintiff's Complaint for failure to state a claim upon which relief can be granted. Plaintiff filed a claim for, *inter alia*, business income coverage from ACE after its retail furniture business was forced to close in March 2020 pursuant to an order issued by the Governor of California in the early days of the COVID-19 pandemic. ACE denied Plaintiff's claim for coverage, and Plaintiff filed suit. This case requires the Court to interpret an "all risk" Businessowners' Insurance Policy to determine whether Plaintiff has suffered a loss that ACE must cover.

The over-100-page Policy at issue here can only be described as a labyrinth of pages, paragraphs, and pronouncements. The terms of the Policy require the insured to fall down a rabbit hole and wander through a vast thicket of verbiage that would leave even the most careful reader mystified by the mazes of pages to be pieced together and deciphered in order to determine if there is coverage on the other side.  For the reasons that follow, Defendant's motion will be denied.

1

## I.     FACTUAL BACKGROUND

Plaintiff is a California corporation that operates an interior design/retail furniture business with two locations in California. Plaintiff purchased an "all risk" commercial policy of insurance from Defendant ("the Policy"). (Compl. ¶¶ 13, 16.)

### A.     Plaintiff's Losses and Claim

In response to the COVID-19 pandemic, on March 4, 2020, Governor Gavin Newsom declared a state of emergency for California. On March 19, 2020, he issued a statewide stay-at-home order, shuttering non-essential businesses. (*Id*. ¶ 31.) The stay-at-home order permitted exceptions for 16 critical infrastructure sectors identified by the federal government, but Plaintiff's business did not fall within those exceptions. (*Id*. ¶ 32.) On April 10, 2020, the County of San Diego entered a stay-at-home order, which stated "the actions required by this Order are necessary to reduce the number of individuals who will be exposed to COVID-19, and … will help preserve critical and limited healthcare capacity in the county and will save lives." (*Id*. ¶ 33.)  On May 7, 2020, Governor Newsom issued an order permitting gradual reopening of the state. (*Id*. ¶ 34.) Plaintiff's two locations, each located in San Diego County, remained closed from March 20, 2020 until May 22, 2020. (*Id*. ¶ 42).

Plaintiff filed a claim under the Policy for lost business income and related coverages, and Defendant denied Plaintiff's claim by letter dated April 24, 2020. (Compl. Ex. B [Denial Letter].) Defendant stated that Plaintiff's losses were not covered by the Policy because they did not arise from any direct physical loss or damage and were barred by the Policy's Virus Exclusion. (Compl. ¶ 45.) Here, Plaintiff seeks a declaration that coverage exists under the Policy and seeks damages for Defendant's alleged breach of contract. Plaintiff alleges that the Policy "provides broad property insurance coverage for all non-excluded, lost business income[.]" (*Id*. ¶ 3.) The

Complaint alleges that Plaintiff "has incurred, and continues to incur, among other things, a substantial loss of business income and extra expenses covered under the Policy." (*Id.* ¶ 43.) Specifically, Plaintiff's allegations are primarily related to coverage for Business Income and Extra Expense, but the Complaint also contains allegations related to the Policy's Additional Coverages for Action of Civil Authority and Business Income from Dependent Properties as "additional bas[e]s for coverage under the Policy[.]" (Compl. ¶¶ 43-49.) Plaintiff's Complaint alleges that the government orders, in and of themselves, caused a loss of business income for which Defendant must pay. (*Id.* ¶ 46.) Alternatively, Plaintiff alleges, "to the extent the orders themselves are not found to be a Covered Cause of Loss, the COVID-19 pandemic and ubiquitous nature of the coronavirus caused direct physical loss of or damage to the Covered Property." (*Id.* ¶ 47.) Finally, Plaintiff alleges that the Virus Exclusion does not apply, and/or "does not preclude coverage for Plaintiff's claim under the Policy." (*Id.* ¶¶ 51-52.)

> **B.      The Motion to Dismiss**

Defendant argues that Plaintiff has not alleged a claim that falls within the scope of the Policy coverage because its losses were caused by a virus, which is excluded. "[R]ewriting clear and unambiguous contractual language is not the solution to the extraordinary problems arising from the coronavirus pandemic," Defendant cautions the Court. (Def.'s Mot. to Dismiss at 1.) Defendant argues that Plaintiff cannot amend to avoid the Virus Exclusion, so its Complaint should be dismissed with prejudice. (*Id.* at 13.) ACE's motion does not address "whether the SARS-CoV-2 virus is in fact capable of causing 'direct physical loss of or damage to property,' but [Defendant] reserves the right to do so should that issue become relevant." (*Id.* at 5 n.3.) Plaintiff's Complaint does not allege the presence of the virus at either of Plaintiff's business locations, so the Court does not consider the precise issue Defendant has reserved to be relevant to disposition

of this motion. Moreover, in its reply, Defendant contends that "[a]lthough not the basis of ACE's motion … California law[] holds that physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.'" (Def.'s Reply Br. in Supp. Mot. to Dismiss [Def.'s Reply] at 1.)

Plaintiff opposes Defendant's motion to dismiss by arguing the Complaint states a claim for coverage and the virus exclusion does not bar Plaintiff's claims. Plaintiff notes that ambiguous language in insurance policies must be interpreted in favor of the insured and exclusions to coverage must be construed narrowly against the insurer. (Pl.'s Resp. in Opp'n to Def.'s Mot. to Dismiss [Pl.'s Opp'n] at 2.) Plaintiff argues, "[w]hile the virus and its propensities were considerations taken into account by government officials, the causal chain begins, and ends, with the issuance of the closure orders that deprived Plaintiff of its use of its property." (*Id.*) Plaintiff argues what caused the loss is a question of fact that should not be decided at this early stage of the litigation. (*See id.* at 9.) Additionally, according to Plaintiff, if a loss is caused by a combination of covered and excluded causes, coverage exists as long as the covered risk was the most important cause or the "efficient proximate cause" of the loss. (*Id*. at 11.) Plaintiff further argues that California courts consistently decline to enforce contractual provisions that seek to circumvent the efficient proximate cause doctrine. (*Id*. at 10-11.)

## II.    STANDARD OF REVIEW

In deciding a motion to dismiss for "failure to state a claim upon which relief can be granted," the Court must accept as true all factual allegations in the complaint and make all reasonable inferences in favor of the plaintiff.  Fed. R. Civ. P. 12(b)(6); *McDermott v. Clondalkin Group, Inc.*, 649 F. App'x 263, 266 (3d Cir. 2016). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible

on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 557 (2007)). The plausibility requirement "asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* When a pleading draws a conclusion that does not logically follow from the alleged facts themselves, the conclusion is not a factual allegation entitled to an assumption of truth. *See Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013).

## III.    DISCUSSION

The pandemic-era situation presented in this case, as it relates to business losses, is unprecedented in modern history. The economic costs and burdens placed on businesses by the pandemic are enormous. Upon review of the record and the case law, the Court finds that the losses alleged in Plaintiff's Complaint plausibly fall within the scope of the Policy. Further, Defendant has not established that the Virus Exclusion unambiguously applies to or bars coverage for Plaintiff's alleged losses. Thus, its motion will be denied.

To explain how the Court arrived at this decision, first, the Court will review the standard to state a claim for insurance coverage under California law. Next, the Court will explain the general structure and content of the "all risk" Businessowners Policy issued to Plaintiff by Defendant—endeavoring to unravel a spool of string[1] as it traverses the labyrinth in order to map a path through. Then, the Court will explain why, for the purpose of Business Income and related coverages, the language "direct physical loss of or damage to property at the described premises" is ambiguous. Finally, the Court will explain why it rejects Defendant's argument that the Virus Exclusion unambiguously bars coverage for Plaintiff's alleged losses.

### A.    Stating a Claim for Coverage Under California Law

---

[1] *See* the myth of Theseus, the labyrinth, and the Minotaur. *E.g. Theseus and the Minotaur*, ANCIENT-GREECE.ORG    (last    visited    May    7,    2021),    https://ancient-greece.org/culture/mythology/minotaur.html.

Defendant contends that California law applies here, because in insurance coverage cases, courts apply the law of "the state which the parties understood was to be the principal location of the insured risk during the term of the policy." (Def.'s Mot. To Dismiss at 8.) For the purposes of this motion, Plaintiff does not dispute that California law applies to Kern & Co.'s claims.[2]

Under California law, interpretation of an insurance contract is a question of law for the court to decide using ordinary rules of contract interpretation. *Pappy's Barber Shops, Inc. v. Farmers Group, Inc.,* 487 F. Supp. 3d 937, 942 (S.D. Cal. Sept. 11, 2020) (citing *Waller v. Truck Ins. Exch., Inc*., 11 Cal. 4th 1, 18 (1995)). There are two parts to any insurance coverage analysis. *Id.* First, the insured bears the burden of pleading a claim that falls within the policy terms, which should be interpreted broadly in favor of coverage. *Id*. If the insured establishes that its claim falls within the policy terms, the burden shifts to the insurer to prove that an exclusion applies. *Id*. Generally, "insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *My Choice Software, LLC v. Travelers Cas. Ins. Co.,* 823 F. App'x 510, 512 (9th Cir. 2020) (citation and internal alterations excluded).

In interpreting an insurance contract, the court examines the language of the policy to determine its plain and ordinary meaning. *Pappy's Barber Shops, Inc.*, 487 F. Supp. 3d at 942. The policy must be interpreted as a whole; where the policy is ambiguous, it should be interpreted to protect the reasonable expectations of the insured. *Id*. A policy is ambiguous if it is capable of more than one reasonable interpretation. *Id.* "Ambiguities may concern the fact or extent of

---

[2] However, Plaintiff reserved its right to contest the choice of law issue at a later date. (Pl.'s Opp'n at 2 n.1.) The insured businesses are located in California, and the stay-at-home orders at issue were directed to California residents and businesses. Nothing in the record thus far indicates to the Court that any law other than California law would apply to Kern & Co.'s claims.

coverage . . .  and may arise from contradictory or necessarily inconsistent language in different portions of the policy[.]" *Gutowitz v. Transamerica Life Ins. Co.,* 126 F. Supp. 3d 1128, 1136 (C.D. Cal. 2015). However, "[a] court may not adopt a strained or absurd interpretation of the policy language in order to find ambiguity where none would otherwise exist. . . . When a court concludes that policy language is ambiguous, it examines whether a finding of coverage is consistent with the objectively reasonable expectations of the insured." *Id*. With all of this in mind, the Court will explain the structure and relevant content of the Policy at issue here.

### B.      Overview of the Policy

The all-risk "Businessowners Policy" at issue is 113 pages in total, and like many insurance policies, it is made up of different "forms", often referred to as "endorsements." The two forms that make up the bulk of this Policy are the Businessowners Coverage Form ("BCF") and the Businessowners Property Enhancements Form ("BPEF"). The BCF is a 53-page standard businessowners insurance policy. It is drafted in an outline format with three broad sections: (I) Property, (II) Liability, and (III) Common Policy Conditions. Relevant here is Section I—Property, which comprises the bulk of the BCF.  Separately, the BPEF, as the name suggests, enhances the coverage provided in the BCF under Section I—Property. The BPEF is also drafted in an outline format; it is 30 pages of additions and modifications to Section I—Property in the BCF.

The BCF does not include a table of contents or any simple means of discerning the basic structure of its outline or which of its provisions are modified or replaced in the BPEF. Indeed, an introductory paragraph of the BCF advises policyholders, "[v]arious provisions in this policy restrict coverage. Read the entire policy carefully to determine rights, duties and what is and is not covered." (*Id*. at 6.) The chosen format makes construction of the Policy as a whole, even more important to determining the objectively reasonable expectations of the insured.

Before the BCF, the Policy begins with four pages that comprise the "Businessowners Policy Declarations," which specify Plaintiff's overall coverage limits and the addresses of the described premises. Within the BCF, Section I—Property consists of eight broad parts, (A) through (H). Most relevant here are: (A) Coverage, (B) Exclusions, and (H) Property Definitions.

Following the BCF but before the BPEF, there are approximately 15 pages of separate endorsement forms. (*Id*. at 59-73.) These largely refer to Section II—Liability of the BCF. Then, there is the BPEF, which begins with a Schedule, in the form of a chart. It lists 61 coverages and "enhancements", organized by which Limit of Insurance applies to the coverages listed beneath each heading. (*Id*. at 75-77.) And following the 30-page BPEF, there are another four endorsement forms that modify the Businessowners Coverage Form. (*Id*. at 107, 105-06.)

In the BCF, Section I—Property, part (A) Coverage and part (B) Exclusions are each broken into six numbered paragraphs, which seem to correspond with each other. These six paragraphs in (A) Coverage are titled: (1) Covered Property, (2) Property Not Covered, (3) Covered Causes of Loss, (4) Limitations, (5) Additional Coverages, and (6) Coverage Extensions. These paragraph titles use capital letters and are referred to throughout the Policy using capital letters, but none of those six terms are contained in quotation marks or defined in paragraph (H) Property Definitions. Paragraphs 1 through 4 make up two and a half pages of part (A) Coverage, whereas paragraph (5) Additional Coverages and (6) Coverage Extensions, together, comprise 14 pages of part (A) Coverage in the BCF.

Beneath the heading (A) Coverage, prior to any numbered paragraphs, the Policy states, "[w]e will pay for direct physical loss of or damage to Covered Property at the premises described in the Declarations caused by or resulting from any Covered Cause of Loss." (*Id*. at 6.) Under (1) Covered Property, the Policy explains that Covered Property refers to Buildings and Business

Personal Property, as those terms are described in their respective subparagraphs. (*Id*. at 6-7.) And paragraph (2) Property Not Covered, begins, "Covered Property does not include:" then lists ten types of property (subparagraphs a. through j.), that the Policy does not cover. (*Id*. at 7.) Under paragraph (3) Covered Causes of Loss, the Policy simply states "[d]irect physical loss unless the loss is excluded or limited under Section I—Property." (*Id*. at 7.)

Plaintiff's claims relate to Business Income and related coverages, which are included under paragraph (5) Additional Coverages. In the BCF, paragraph (5) Additional Coverages contains 18 separate coverages (a. through r.) that are included in the Policy *in addition* to what is addressed under paragraph (1) Covered Property. (*Id*. at 8-20.) The final paragraph in part (A) Coverage is paragraph (6) Coverage Extensions, which specifically expands the coverage explained by paragraphs 1 and 2. For example, "accounts receivable" is included under paragraph (2) Property Not Covered, but there is a Coverage Extension in paragraph 6 for accounts receivable.

The coverage for Business Income under paragraph (5) Additional Coverages, states that it will pay:

> [T]he actual loss of Business Income you sustain due to the necessary suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by direct physical loss of or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss.

(*Id*. at 11.) As Plaintiff alleges, the Policy does not define "direct physical loss of or damage to property . . . ." (Compl. ¶ 19.) And under (3) Covered Causes of Loss, the Policy simply states, "direct physical loss unless the loss is excluded or limited under Section I—Property." (Policy at 6.)

Much like part (A) Coverage, part (B) Exclusions is divided into six numbered paragraphs, which will be referred to as: (1) Anti-concurrent Cause Exclusions, (2) We Will Not Pay

Exclusions, (3) Specified Concurrent Causes Exclusions, (4) Additional Exclusion, (5) Business Income and Extra Expense Exclusions, and (6) Accounts Receivable Exclusion.[3] In part (A) Coverage, the Business Income and Extra Expense coverages are found under paragraph (5) Additional Coverages, and in part (B) Exclusions, paragraph 5 are the Business Income and Extra Expense Exclusions. Similarly, part (A) Coverage, paragraph (6) Coverage Extensions includes the Accounts Receivable Coverage Extension, and part (B) Exclusions, paragraph (6) includes the Accounts Receivable Exclusion.

Part (B) Exclusions, paragraph 1 begins with an anti-concurrent causation clause, which states:

> We will not pay for loss or damage caused directly or indirectly by any of the following. Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss. These exclusions apply regardless of whether or not the loss event results in widespread damage or affects a substantial area.

(*Id*. at 22.) Beneath the anti-concurrent causation clause, there are ten subparagraphs listing the causes subject to the anti-concurrent causation clause. These will be referred to as the Anti-Concurrent Cause Exclusions. The Virus Exclusion is one of the Anti-Concurrent Cause Exclusions.  (*See id*. at 25. Section I—Property, Part B. Exclusions, paragraph 1.j.: "Any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.")

Following the BCF but before the BPEF, there are approximately 15 pages of separate endorsement forms. (*Id*. at 59-73.) Then, there is the BPEF, which begins with a Schedule, in the form of a chart. It lists 61 coverages and "enhancements", organized by which Limit of Insurance

---

[3] The Court has named paragraph numbers one through three for ease of reference; numbers four through six are names quoted directly from the Policy.

applies to the coverages listed beneath each heading. (*Id*. at 75-77.) And following the 30-page BPEF, there are another four endorsement forms that modify the Businessowners Coverage Form. (*Id*. at 107, 105-06.) Suffice it to say that interpretation of this Policy is not a task for the faint of heart.

### C.     Plaintiff's Alleged Covered Losses

To state a claim for relief, Plaintiff must allege losses that fall within the scope of the Policy. Here, all of the coverages potentially at issue are related to Business Income—which is an Additional Coverage in Section I—Property, Part (A) paragraph 5—and therefore the Complaint must allege a suspension of operations due to, "direct physical loss of or damage to property"[4], that was "caused by or resulting from a Covered Cause of Loss." (Policy at 11, 12, 14, 15.) Paragraph (3) Covered Causes of Loss only states "direct physical loss unless the loss is excluded or limited under Section I—Property." (*Id*. at 7.) Plaintiff contends that when "construing the operative phrase 'direct physical loss of or damage to Covered Property,' it is essential to focus on the word 'property.' A thing is not 'property' unless and until legal rights attach to it." (Pl.'s Opp'n at 11.) The Court agrees that the word "property" is an important focus of this analysis, however, Plaintiff is mistaken in relying upon the language beneath the general heading (A) Coverage, "direct physical loss of or damage to Covered Property." (Policy at 6.) As the Court will explain, in this Policy, Business Income insurance is not the same as the insurance that applies to Covered Property—it is an *additional* coverage. Plaintiff's claims are for Business Income and related coverages, which are not limited by the term Covered Property, *i.e.* Buildings and/or Business Personal Property.

---

[4] The Additional Coverage for business income from dependent properties does not include the word "direct." (Policy at 15.)

In this Policy, Business Income and Extra Expense insurance is separate and distinct from insurance for Covered Property. (*Compare id.* at 84 ("You may extend the insurance that applies to Buildings…. You may extend the insurance that applies to Business Personal Property…"), *with id*. at 95 ("You may extend your business income coverage to apply to property at any location you acquire[,]"), *id*. at 17 ("you may extend the insurance that applies to Business Income and Extra Expense…").) The Court must consider the language of the Business Income and Extra Expense related coverages in the context of the property interest they were purchased to protect— the business operation. Therefore, the Court will analyze the distinct language used in relation to loss of Business Income and/or Extra Expense coverages to determine if it creates ambiguity in the definitions of "property" and "direct physical loss".

For the reasons that follow, the Court finds that Plaintiff has plausibly stated claims for coverage related to Business Income / Extra Expense insurance. The Court will explain why, considering the Policy as a whole, it finds the phrase "direct physical loss of or damage to property at the described premises" as it relates to Business Income and Extra Expense insurance, ambiguous. First, the Court will consider the definition of property in the insurance for Covered Property and Additional Coverages for Business Income and Extra Expense. Next, the Court will interpret the language "direct physical loss of or damage to property", and finally, the Court will assess the meaning of a "Covered Cause of Loss".

1.    *Covered Property and Additional Coverages for Business Income and Extra Expense*

The Policy provides two distinct categories of property insurance—Covered Property insurance and Business Income / Extra Expense insurance—which protect different business property interests. Under Section I—Property, (A) Coverage, (1) Covered Property, the Policy states: "Covered Property includes Buildings as described under Paragraph a. below, Business

12

Personal Property as described under Paragraph b. below, or both, depending on whether a Limit of Insurance is shown in the Declarations for that type of property." (Policy at 6-7.) Thus, "Covered Property" refers to Buildings, Business Personal Property, or both. Business Personal Property includes, *inter alia*, "property you own that is used in your business[,]" "[p]roperty of others that is in your care, custody or control…" and "[l]eased personal property which you have a contractual responsibility to insure[.]" (*Id*. at 6.)

Some of the coverages included under paragraph (5) Additional Coverages expand coverage in relation to Covered Property, while others relate to Business Income or Extra Expense insurance. Although there is overlap, the distinction in categories of property insurance included in this Policy is illustrated by the Declarations in the BCF, which describe the insurance limits applicable to Section I—Property. The Declarations list a Blanket Limit, and Business Personal Property Limits at each of the described premises. (*See id.* at 69.) Separately, the Declarations list a limit of insurance under Section I—Property for Business Income and Extra Expense, the limit of which is the "actual loss sustained." (*Id*. at 2.) Further, the BPEF Schedule is organized according to which Limit of Insurance applies to each coverage, the categories include: "Coverages subject to the Blanket Limit of Insurance", "Coverages subject to the applicable Building or Business Personal Property Limit of Insurance *or* Included in Business Income and Extra Expense", and "Coverages subject to separate Limits of Insurance." (*Id*. at 75-76.) (emphasis added).

Business Income and Extra Expense are necessarily related forms of coverage—they provide insurance to protect the business "operations", *i.e.,* "your business activities occurring at the described premises." (*Id*. at 38.) The Business Income Additional Coverage will pay for, "the actual loss of Business Income you sustain due to the necessary suspension of your 'operations'

during the 'period of restoration'. *The suspension must be caused by direct physical loss of or damage to property at the described premises.* The loss or damage must be caused by or result from a Covered Cause of Loss." (*Id*. at 11.) (emphasis added).

The Extra Expense Additional Coverage will pay the "necessary Extra Expense you incur during the 'period of restoration' that you would not have incurred if there had been no direct physical loss or damage to property at the described premises. The loss or damage must be caused by or result from a Covered Cause of Loss." (*Id*. at 13.) Extra Expense will pay the additional costs the business incurs to restore operations, that it would not have incurred if its operations had not been necessarily suspended.

In attempting to assess the "plain meaning" of the language in this Policy, the Court focuses on the distinct categories of property insurance provided by the Policy. "Ambiguities may concern the fact or extent of coverage . . .  and may arise from contradictory or necessarily inconsistent language in different portions of the policy[.]" *Gutowitz,* 126 F. Supp. at 1136.

Throughout the Policy, when the Policy contemplates insurance strictly for "Covered Property", *i.e.*, Buildings and/or Business Personal Property, the Policy states "direct physical loss or damage" or simply "damage." (*See id*. at 82, 95, 96 ("With respect to a building that has sustained covered direct physical loss or damage…"); *id*. at 84 ("We will pay for direct physical loss or damage to Building or Business Personal Property…"); *id*. at 98 ("This insurance is extended to apply to a reward for information leading to a felony conviction arising out of loss or damage to Covered Property…").) When, however, the Policy contemplates coverage under Business Income and Extra Expense insurance, the Policy uses the phrase "direct physical loss *of* or damage to property at the described premises", which indicates coverage of "property" beyond

merely "Covered Property".[5] (*Id*. at 11, 13) (emphasis added). Indeed, the Business Income and Extra Expense Additional Coverages use the phrase "property at the described premises," not "Covered Property," which indicates the loss of or damage to "property" contemplated by Business Income insurance is not limited to loss or damage to Buildings or Business Personal Property. This inconsistent language used in relation to different forms of property loss, covered under different provisions of the Policy, creates ambiguity.

"When a court concludes that policy language is ambiguous, it examines whether a finding of coverage is consistent with the objectively reasonable expectations of the insured." *Gutowitz*, 126 F. Supp. 3d at 1137. "In determining whether coverage is consistent with the insured's objectively reasonable expectations, the disputed policy language must be examined in the context of its intended function in the policy." *Id*. Therefore, whether coverage for Plaintiff's losses exists will depend on Plaintiff's objectively reasonable expectations.

The Additional Coverages disputed here are all Business Income and/or Extra Expense coverages. (Compl. ¶¶ 43-49.) If "property" in the context of those Additional Coverages includes the use and operation of the business at the described premises, then a mandatory shutdown of in-person business operations could reasonably constitute a loss of that property. Viewing the Policy as a whole, it is a reasonable interpretation of the Business Income insurance language that the ability to operate a business, and generate Business Income, is one of the sticks in the bundle of property rights protected by this Policy.

The Court will next consider whether Plaintiff's alleged losses constitute a "direct physical loss of or damage to property" and are "caused by or result from a Covered Cause of Loss[,]"

---

[5] The Policy also uses "loss of or damage to" when referring to insurance for Covered Property that is extended to include "money" or "securities". (*Id*. at 86, 94.)

which are the other two requirements to state a claim under these Additional Coverages. (Policy at 11, 13.)

       2.    *Direct Physical Loss of or Damage to Property*

Defendant briefly argues that, under California law, "direct physical loss," as that term is generally understood in insurance contracts, requires a "distinct, demonstrable, physical alteration." (Def.'s Reply at 1-2 (quoting *MRI Healthcare Ctr. Of Glendale, Inc. v. State Farm Gen. Insurance Co.*, 187 Cal. App. 4th 766, 799 (2010)).) Some federal courts in California have adopted this line of reasoning. *See 10E, LLC v. Travelers Indemnity Co. of Connecticut*, 2020 WL 5359653, *4 (C.D. Cal. Sept. 2, 2020) ("Under California law, losses from inability to use property do not amount to 'direct physical loss of or damage to property' within the ordinary and popular meaning of that phrase. Physical loss or damage occurs only when property undergoes a 'distinct, demonstrable, physical alteration.' . . . Detrimental economic impact does not suffice."). Holdings such as that have been based largely on the case *MRI Healthcare*. However, the language of the Policy here differs from the policy language examined in that case. Just as Defendant notes that Plaintiff cannot "rewrit[e] clear and unambiguous contractual language" to create coverage where none exists, Defendant cannot use caselaw to overcome ambiguity. (Def.'s Mot. to Dismiss at 10.)

In *MRI Healthcare*, the plaintiff claimed business income losses related to the temporary breakdown of an MRI machine. After a large storm caused damage to the building's roof, the machine was powered down and moved so the roof could be replaced. After the move, the machine would not power back on and was unusable for about two months. The plaintiff's business insurance policy, under Section I Property Coverages, included "Coverage B—Business Personal Property" and "Coverage C—Loss of Income." *Id.* at 771. In that policy, the Loss of Income Coverage would pay, "the actual loss of 'business income' you sustain due to the necessary

suspension of your 'operations' during the 'period of restoration'. The suspension must be caused by *accidental direct physical loss* to property at the described premises … caused by an insured loss." *Id*. at 771 (emphasis added). The insurance company denied the plaintiff's claim for business interruption insurance, property damage, and loss of business income. The court found that the plaintiff's loss of income related to the powering down of the MRI machine did not constitute a "physical loss" because the machine had not been altered. Further, "even if the malfunction could be characterized as 'physical loss,' it was not 'accidental'" because the decision to power down the machine was made intentionally, and the center knew there were risks associated with turning off the machine. *Id*. at 778. The court determined that for there to be a loss within the meaning of the policy, some external force must have acted on the insured property to cause a physical change in its condition, "*i.e*., it must have been 'damaged' within the common understanding of that term." *Id*. at 780.

Under that interpretation of *MRI Healthcare*, the cessation of business operations due to government closure orders, as alleged in Plaintiff's Complaint, would not qualify as a "direct physical loss" in the context of property insurance because the business establishment was not "damaged" within the common understanding of that word—even if the business could not operate. However, the language of the Policy at issue here cannot be reconciled with that interpretation. Here, the Policy covers losses due to "direct physical loss of or damage to property", whereas in *MRI Healthcare*, the policy covered only "accidental direct physical loss". If "direct physical loss" in this Policy were synonymous with damage, then the disjunctive language of the Business Income Additional Coverage—"direct physical loss of or damage to"—would be redundant. The language used in this Policy, and specifically the coverages at issue here, arguably provides broader coverage than the policy considered in *MRI Healthcare*.

17

Plaintiff notes, "Black's Law Dictionary defines 'ownership' as '[t]he bundle of property rights allowing one to **use**, manage, and enjoy property[.]'" (Pl.'s Opp'n at 11.) Plaintiff argues that the "Closure Orders caused a 'direct physical loss' of [Plaintiff's] property by denying Plaintiff the ability to use its property as intended." (*Id.*) The allegations in Plaintiff's Complaint regarding its suspension of operations could plausibly constitute a "direct physical loss of … property at the described premises," in that Plaintiff lost the ability to physically operate its business at the described premises. The Court concludes that the phrase "direct physical loss of or damage to property at the described premises", in the context of Business Income and Extra Expense insurance, is ambiguous. Moreover, Defendant's motion to dismiss is based entirely on the applicability of the Virus Exclusion, and whether the insured has stated a loss within the scope of the Policy is to be viewed broadly in favor of coverage. Therefore, the Court finds that Plaintiff has alleged a loss of property that plausibly falls within the scope of the Policy, which is sufficient to survive a motion to dismiss.

### 3.   *Covered Causes of Loss under the Policy*

As described above, Plaintiff has plausibly alleged that a mandatory suspension of its in-person operations was a direct physical loss of or damage to property at the described premises. However, to state a claim, Plaintiff's Complaint must also plausibly allege that the suspension was "caused by or resulting from a Covered Cause of Loss." (Policy at 11, 13.) Covered Causes of Loss is the title of a paragraph under part (A) Coverage in the BCF, but it is not a defined term. The entirety of the "Covered Cause of Loss" paragraph states "direct physical loss unless the loss is excluded or limited under Section I—Property." The Court has already explained that Plaintiff has plausibly alleged "direct physical loss" under the Policy and will address whether Plaintiff's alleged losses are excluded under Section I—Property in the next section. Importantly, however,

Plaintiff correctly points out that causation is generally a question of fact that cannot be resolved on a motion to dismiss. *Davis v. United Services Automobile Ass'n,* 223 Cal. App. 3d 1322, 1328 (1990).

In summary, viewing the Policy as a whole, the language "direct physical loss of or damage to property at the described premises" in the context of Business Income and Extra Expense insurance, is ambiguous. As a result, the Court finds that Plaintiff has plausibly alleged a loss of property that falls within the scope of the Policy. Next, the Court will turn to Defendant's argument that, despite plausibly stating a covered loss, the Policy's so-called Virus Exclusion unambiguously bars Plaintiff's claims for the losses alleged in the Complaint.

### D.    The Virus Exclusion

Defendant contends that Plaintiff's Complaint must be dismissed because its claims are barred by the Policy's Virus Exclusion. Piecing together subsections of the Policy, the Virus Exclusion states:

> We will not pay for loss or damage caused directly or indirectly by [any virus, bacterium or other microorganism that induces or is capable of inducing physical distress, illness or disease.] Such loss or damage is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss.

(Policy at 22, 25.) Defendant argues, "[n]o matter the prism, Plaintiff's alleged losses—whether directly or indirectly—were caused by a virus" and therefore cannot be covered because of the Virus Exclusion. (Def.'s Mot. to Dismiss at 1-2.)

The Court is not convinced by Defendant's argument that "[t]he plain language of the virus exclusion precludes coverage here." (*Id*. at 19.) Defendant has not established that the Virus Exclusion unambiguously bars coverage for all of Plaintiff's alleged losses, for two reasons. First, under California law, the efficient proximate cause doctrine prevents enforcement of such broad

anti-concurrent causation language. Second, it is not clear that the Virus Exclusion applies to the Business Income and Extra Expense insurance.

### 1.    *Efficient Proximate Cause*

In California, "[p]olicy exclusions are unenforceable to the extent they conflict with … the efficient proximate cause doctrine." *Julian v. Hartford Underwriters Ins. Co*., 35 Cal. 4th 747, 754 (Cal. 2005). The efficient proximate cause doctrine states that if an insurance dispute involves losses caused by multiple risks or perils, at least one of which is covered and one of which is not, coverage exists so long as the excluded peril is not the "predominant, or most important cause of a loss." *Id*. Therefore, even though the Policy states that damage caused by a virus "is excluded regardless of any other cause or event that contributes concurrently or in any sequence to the loss[,]" such a broad provision is unenforceable under California law.  If the predominant or most important cause of loss is a covered loss not subject to an exclusion, the loss will be covered.

In *MRI Healthcare,* the court noted, "appellate courts in the past had equated [efficient proximate cause] with 'moving cause,' which could be misconstrued if taken literally to mean the 'triggering' cause." 187 Cal. App. 4th at 782. But the court rejected that construction. Ultimately, it determined that "[t]he efficient proximate cause…must be the *predominating* cause." *Id*. (emphasis added). Therefore, in *MRI Healthcare* the court rejected the plaintiff's efficient proximate cause argument because the predominating cause of the MRI machine's malfunction was not the storm, but rather the decision to turn off the machine, which was not a covered loss under the policy.

Here, the Court cannot conclude that the Virus Exclusion included in the Policy unambiguously excludes coverage for business income lost because of closure orders issued to stop the spread of COVID-19. The Complaint alleges it was the government shut down orders that

caused its losses, not the virus. (*See* Compl. ¶ 46 ("The governmental orders, in and of themselves, constitute Covered Causes of Loss within the meaning of the Policy.").) The Complaint does not allege the presence of the virus at the described premises. It alleges that the government orders caused its losses when its business operations were suspended from March to May of 2020. Plaintiff's claimed losses only began during the period of time in which it was prohibited from operating its business in person by the government orders. When the orders were lifted and Plaintiff resumed physical operations, the virus was still at large. Indeed, the virus remains a risk to business employees and customers, more than a year after the first such order went into effect, but businesses are no longer subject to the same operational restrictions. Regardless of what may have precipitated the closure order, the virus continues to exist. Accordingly, it was the order to shut down the business that forced the closure. Thus, the Court considers Plaintiff's argument that the orders themselves caused its losses, or were at least the predominant cause of its losses, to be sufficient to defeat a motion to dismiss.

> 2.   *Application of the Virus Exclusion to Additional Coverage for Business Income and Extra Expense*

Finally, even if COVID-19 were the predominant cause of Plaintiff's losses, in the context of the Policy as a whole, it is unclear to the Court whether the Anti-Concurrent Cause Exclusions—which include the Virus Exclusion—apply to the Policy's coverage for Business Income and Extra Expense. Generally, "insurance coverage is interpreted broadly so as to afford the greatest possible protection to the insured, whereas exclusionary clauses are interpreted narrowly against the insurer." *My Choice Software,* 823 Fed. App'x at 512. An exclusionary clause must be "stated precisely and understandably, in words that are part of the working vocabulary of the average layperson" and "must be construed [narrowly] in the context of the policy as a whole." *Id*. at 511.

Defendant would have the Court end its examination of the Policy with the language of the Virus Exclusion in the BCF quoted above. The Court's analysis must extend beyond that narrow focus, however. The Policy repeatedly instructs the insured to read the entire Policy, and the BPEF states: "Notwithstanding anything to the contrary, the provisions of the Businessowners Coverage Form apply, except as provided in this endorsement." (Policy at 77.) Thus, in keeping with the general rule that exclusionary language must be interpreted narrowly and in the context of the policy as a whole, the Court cannot end its examination of the Policy based only on an analysis of the Virus Exclusion in the BCF. Based on the organization of the BCF and the Policy as a whole, the Court concludes that, at this stage, Defendant has not established that the Virus Exclusion, which is included in paragraph 1 of Part (B) Exclusions, even applies to the Additional Coverages for Business Income and Extra Expense, which are included in paragraph 5 of Part (A) Coverage.

Part (A) Coverage and Part (B) Exclusions each have six numbered subsections. In part (A) Coverage, the Business Income and Extra Expense coverages are found under paragraph (5) Additional Coverages, and in part (B) Exclusions, paragraph 5 is titled: Business Income and Extra Expense Exclusions. Similarly, in part (A) Coverage, paragraph (6) Coverage Extensions includes the Accounts Receivable Coverage Extension, and in part (B) Exclusions, paragraph (6) is titled: Accounts Receivable Exclusion. The structure of the Policy suggests that the six paragraphs in parts A and B were intended to correspond to each other. Thus, it is plausible that the Anti-Concurrent Cause Exclusions (part B paragraph 1) (including the Virus Exclusion) apply to loss or damage to Covered Property (part A paragraph 1), whereas the Business Income and Extra Expense Exclusions (part B paragraph 5) apply to Business Income and Extra Expense insurance (part A paragraph 5). Ambiguities in the Policy's structure and organization, as well as the fact that Plaintiff alleges its losses were caused solely by the government orders, preclude the Court

from agreeing with Defendant that the Virus Exclusion unambiguously bars coverage for Plaintiff's claims.

## IV.  CONCLUSION

For the foregoing reasons, Defendant's motion to dismiss is denied. An Order consistent with this Memorandum will be docketed separately.